## Bush *versus* Bender.

Where, before actual delivery, the possession of personal property is taken by the vendee, through the perpetration of a fraud, the vendor may rescind the contract and replevy his property, and this without re-paying or tendering the vendee the earnest money paid by him.

May 17th, 1886. Before MERCUR, C. J., GORDON, PAXSON, STERRETT, GREEN and CLARK, JJ. TRUNKEY, J., absent.

ERROR to the Court of Common Pleas of *Lancaster county:* Of January Term, 1886, No. 42.

This was an action of replevin, brought by George D. Bender against Matthias Bush to recover possession of three horses valued at $355. Pleas, *non cepit* and property.

The following are the facts of the case as they appeared on the trial.

On February 3d, 1883, Geo. D. Bender, a farmer, living in the vicinity of New Holland, Lancaster county, Pa., was called upon at his place by Matthias Bush, a dealer in horses, who purchased from him three horses for the sum of $355. Ten dollars was paid that day as earnest. The balance of $345 was to be paid on the following Monday at the Black Horse Hotel in Lancaster, when delivery was to be made. Bender brought the horses, in pursuance of the agreement, to the said hotel. Upon their arrival in the hotel yard Mr. Bender refused to deliver them until he was paid, and ordered them to be tied in the yard, which was done. Bush, Bender and a few others then went into the hotel to pay over and receive the money. When they got into the bar-room Bush, or some one for him, proceeded to count down money in one and two dollar bills to Bender, and when the sum reached about $40, pro-

duced two notes of Bender's to Ransing, one for $150, dated September 18th, 1882, for sixty days, and the other for $152.20, dated November 22d, 1882. Bender refused to receive said notes in payment, and started immediately to the yard for his horses, when they were gone—Bush having got some person or persons to take the horses away in the meantime, which was unknown to Bender. The same day Bender issued a writ of replevin for the horses and Bush entered bond with the sheriff and claimed property. On the trial in Court, Bush, the defendant below, offered the two notes above referred to in evidence and tried to have the damages reduced to the extent of the amount of the same with interest, which was refused. (Fourth assignment of error.)

The plaintiff offered to give credit for the $10 earnest money by having it deducted from the amount of the damages to be awarded to him.

The defendant presented the following points:

The defendant asks the Court to charge the jury as follows:

1. That before the plaintiff, Geo. D. Bender, can rescind the contract made with the defendant, Matthias Bush, for the sale and delivery of the horses in question, he must have first returned or offered to return the ten dollars paid him as a part of the consideration money, and that before the bringing of this suit. Plaintiff not having done so the verdict should be for the defendant.

Answer. We answer this in the negative. (First assignment of error.)

2. If the jury believe there was an actual delivery of these horses to the vendee then they should find for the defendant, unless such delivery was obtained by false representations, contrivances or artifices amounting to actual fraud.

Answer. Yes.

3. If the jury believe that the sale and delivery were obtained by actual fraud, then such sale cannot be rescinded by the plaintiff without having first returned or offered to return the ten dollars paid him as part of the consideration money. The plaintiff having acknowledged that he made no such return or offer to return, then the verdict should be for the defendant.

Answer. We refuse to affirm this point. (Second assignment of error.)

In the general charge the Court instructed the jury, *inter alia,* as follows:

Now fraud, it is true, is generally a question of fact for the jury, but there are states of facts which the law pronounces

[Bush *v.* Bender.]

to be conclusive evidence of fraud. We do not, however, take the facts from the jury in this case; we do not say that the statement of facts in this case shows a legal fraud, [but we do instruct you, that if Bush bought these three horses for $355—said nothing about buying for Ransing, and that he agreed to the price of $355, and requested Bender to deliver the three horses at the Black Horse Hotel and believe that either Bender or his man brought them there and tied the horses in the back yard and then went into the hotel with Bush to settle for them for the price agreed upon, and that there in the hotel Bush refused to pay for the horses, but looked on while William Resh counted down to Bender $40 and then threw down two notes of Bender's, that he had given to one Ransing long before, threw them down to ʹBender as part of the purchase money, and which Bender refused to accept—if you believe from the evidence that Bush did that or had Resh to do it, and that while this thing was going on in the hotel, that the horses were unloosed from where Bender's man, Fogel, had tied them, and taken away; the Court does instruct you that if you believe that testimony, believe that payment was offered in the manner stated, we instruct you that it was fraud—actual fraud in fact upon Mr. Bender and the defendant, Bush, cannot consummate the contract of this purchase of the three horses in that manner.] (Fifth assignment of error.)

We instruct you that the law is, the seller may keep the property; has a right to keep the horses on default of payment, unless he has expressly waived the right to keep them. Is there any evidence that he waived the right to keep them? He had said to Bush, " as soon as you pay for the horses you can put them where you please."

We instruct you that if there was no agreement between Bender and Bush for credit, the sale of course was a cash sale when the horses were delivered. And we further say to you, that if you believe that the horses were unloosed and taken from the yard without Bender's consent, it was taking them out of his possession and control unlawfully.

We instruct you that it was in violation of the contract and fraud of the seller's right. Bender was not bound to take as money those two promissory notes laid down to him.

Was there any agreement for credit in this contract of sale? That has not been urged by any party to this suit. We instruct you that in a sale of this kind, wherever time is fixed, the law implies that the terms are cash on delivery.

This doctrine of the law meets the evidence of both plaintiff and defendant.

[Bush *v.* Bender.]

The jury found the following verdict:

The jury finds a verdict in favor of the plaintiff for $355 less $10—namely, $345 with interest from February 5th, 1883, to date, August 26th, 1885, making a total of $397.96.

Judgment was entered upon this verdict, whereupon the defendant took this writ assigning for error, *inter alia*, the rejection of the two notes in evidence, the answer of the Court to his points, and that portion of the general charge included within brackets.

*J. A. Coyle* (*W. W. Franklin* and *B. F. Eshleman* with him), for plaintiff in error.—No language can be stronger, clearer, or more convincing, in support of the position taken by the defendant below in his first point that a tender of the ten dollars paid on account of the horses must have been made before suit brought, than that used in Pearsoll *v.* Chapin, 44 Pa. St., 9. See also on this point The Turnpike Co. *v.* The Commonwealth, 2 Watts, 433 ; Roth *v.* Caissey *et al.*, 30 Pa. St., 145 ; Staines *v.* Shire, 16 Pa. St., 200, opinion on p. 204 ; and Leaming *et al. v.* Wise *et al.*, 23 Pa. St. 123. In Benjamin on Sales (Fourth American edition), vol. I., § 606, p. 530, note 2, it is said, " No principle is better settled than that a party cannot rescind a contract and at the same time retain possession of the consideration in whole or in part which he has received under it," and in support of this statement a large number of cases are cited.

The fact that the value of the property not returned is trifling ought not to make any difference in the application of this principle : See Morse *v.* Brackett, 98 Mass., 209, and Bassett *v.* Bram, 105 Mass., 551, 558.

It is true the Court told the jury that they would not say to them that there was actual fraud in this case, but in the same breath the Court did instruct them that if they believed the testimony (reciting the facts in both parties' testimony— see 5th specification), then there was actual fraud, such as permitted the plaintiff to rescind. We submit that there was no such fraud in this case and if there was any evidence of it, it was such as should have been left to the jury. " Fraud without damage or damage without fraud gives no cause of action." The payment of plaintiff's own debt (in this case admitted by Bender at the time of delivery, to be valid) was no damage : Benjamin on Sales (4 Amer. Ed.) vol. 1, 639, page 557 and notes. There is a vast difference between this case and others decided in reference to the kind of fraud which will permit a vendor to rescind and replevy, even between it and that of Harner *v.* Fisher, 58 Pa. St., 453.

3 AMERMAN—7

[Appeal of Ranck et al.]

*B. F. Davis* and *H. M. Houser*, for defendants in error, were not heard.

PER CURIAM. This was an attempt of the defendant below to get possession of the horses contrary to the manifest intent and spirit of the contract. He was not entitled to the possession until he paid for them. The ingenious device to which he resorted to compel the application of the value of the horses on the notes which he held against the other party, cannot receive the sanction of law. Having given bond in this action of replevin and retained the horses, on the right being found against him, the further finding was an assessment of damages. In fixing on this amount it was proper for the jury to take into consideration the ten dollars which he had paid. They are presumed to have done so, and to have returned a verdict for the residue of the damages.

Judgment affirmed.